[Cite as *Centerville v. Leonard*, 2018-Ohio-2112.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF CENTERVILLE | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27669 |
| | : | |
| v. | : | Trial Court Case No. 16-CRB-02881 |
| | : | |
| DANIEL M. LEONARD | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of June, 2018.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, 2325 Wilmington Pike, Kettering, Ohio 45420
       Attorney for Plaintiff-Appellee

FRANK MATTHEW BATZ, Atty. Reg. No. 0093817, 126 N. Philadelphia Street, Dayton, Ohio 45403
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Appellant, Daniel Leonard, was convicted of criminal trespass for ringing the doorbell of his next-door neighbor. He claims that he didn't do it and that the evidence doesn't show that he did. But we conclude that the evidence is sufficient to find him guilty and that his conviction is not against the evidence's manifest weight. We affirm the conviction.

## I. Trial Evidence and Procedural History

{¶ 2} Diana Keener resides in a four-unit condominium in Centerville, Ohio. Keener's condo has two exterior doors—one at the front, which exits onto a shared patio, and another door at the back, next to her garage. The back of the condo faces a dead-end street. Leonard is one of Keener's neighbors. His back door is only a few steps from hers.

{¶ 3} In 2016, around Thanksgiving, Keener had a doorbell installed beside each door. The chime for each door was different, for obvious reasons. Soon after they had been installed, one of the doorbells would ring, but when Keener answered the door, no one would be there. At first, it happened only periodically, but it got to the point that a doorbell was being rung "at all times of the day and night." (Tr. 15). It usually took Keener only a moment to answer the door, so she figured that it was a neighbor ringing the doorbell. Ruling out her two other neighbors, she came to suspect that the culprit was Leonard, based on "a couple of incidents" that she had had with him. (*Id.* at 17). Keener started notifying the Centerville Police Department each time a mysterious ring occurred. And police officers came out to her condo several times in the week leading up to Christmas.

{¶ 4} On the night of December 19, Officer Roger Rose responded. He noted that Leonard's unit was the only other unit in the building with lights on. Rose also noted snow-covered sections of the ground behind Keener's condo, with the exception of the area between Leonard's and Keener's back doors. In the areas where there was snow, Rose saw no footprints in the snow approaching or leaving the four-unit building in any direction.

{¶ 5} The next day, December 20, Rose responded to Keener's condo three times. The first time, in midafternoon, Rose spoke with Leonard and asked him if he had rung Keener's doorbell. Rose testified that Leonard admitted that he'd rung it twice after hearing noises coming from her condo. Leonard said that he did not speak to Keener, that he just rang the doorbell. Officer Rose told Leonard that the rings were unwelcome and asked him to stop. Leonard agreed not to do it again. The second time that Rose responded, around 9 p.m., he again spoke with Leonard. This time Leonard denied ringing the doorbell. The third time that Officer Rose responded, near midnight, he did not talk to Leonard, but Rose did notice that the light was on in Leonard's garage. Like the previous day, Officer Rose saw no footprints in the snow.

{¶ 6} Keener began keeping a log of the mysterious ringings (State's Exhibit #1) on December 21. That day there were four.

{¶ 7} The next day, December 22, there were five ringings between 12:30 a.m. and 8:30 a.m.[1] Around 5:30 p.m., Sergeant Steven Maynard installed a motion-activated trail camera on a gutter pipe above and to the side of Keener's back doorbell, pointing

---

[1] Two police officers responded that morning. Leonard's brief says that while the officers were there, the front and back doorbells rang at the same time, suggesting that the doorbells were malfunctioning. But that's not what Keener said in her testimony. Her testimony was that while the officers were speaking with her at the front door, the back doorbell rang.

toward the back of Leonard's condo. Sergeant Maynard retrieved the camera that night around 10:30 p.m. Maynard testified that the camera had been activated once. The recorded video shows Leonard exit his garage on foot around 7:30 p.m., pulling a garbage can. He stops and looks from side to side. Leonard then takes two side steps toward Keener's back door and raises his arm in the direction of the door before immediately re-entering his garage. Leonard's hand is outside the camera frame, so the video does not show that his finger actually pressed the doorbell button. But Sergeant Maynard testified that he went to Keener's condo and recreated Leonard's movements. He found that when he took "two small steps to the right" and raised his arm, like Leonard had done, his finger was right near Keener's back doorbell. (Tr. 83).[2] Keener testified that she heard the doorbell ring at 7:30 p.m. but did not record the ring in her log. She did record that the back doorbell rang at 9:00 p.m., but the camera did not record any video at that time.

{¶ 8} Leonard took the stand at trial. He testified initially that he would be "seventy-nine years (79) years old come the 20th of December." (*Id.* at 96). And when asked if he was born in 1931, Leonard answered, "Right. June 20, '31." (*Id.*). But later, spontaneously, Leonard asked, "Can I tell my age over again?" and when he is given permission, he said, "I'm eighty-five years old." (*Id.* at 100). Leonard denied ever ringing Keener's doorbell. And he denied telling Officer Rose that he had rung it twice. When asked about the video of him outside Keener's back door, Leonard, who had been a police officer, said that he looked around to check his surroundings, as he was trained to do. Leonard categorically denied raising his arm: "I did not put my arm out to the right." (*Id.*

---

[2] Leonard's brief says that the officer "could only complete the task by taking two giant steps." That's what Leonard's attorney claimed in his closing argument, (Tr. 122), but was not the officer's testimony.

at 120). He denied doing anything with his arm in the video: "[N]o one saw me doing anything with my arm. Because I wasn't doing anything with my arm. And I did not ring the doorbell." (*Id.* at 121).

{¶ 9} The trial court found Leonard guilty of criminal trespass, in violation of R.C. 2911.21(A)(1), for his actions on December 22 and sentenced him to ten days in jail, which the court suspended.

{¶ 10} Leonard appealed.

## II. Analysis

{¶ 11} Leonard assigns two errors to the trial court that respectively challenge the sufficiency and manifest weight of the evidence supporting his conviction. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Wilks*, Ohio Sup. Ct. Slip Opinion No. 2018-Ohio-1562, ¶ 156, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *Wilks* at

¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} Leonard was found guilty of violating R.C. 2911.21(A)(1), which prohibits an unprivileged person from "[k]nowingly enter[ing] or remain[ing] on the land or premises of another." Leonard's argument is that the evidence does not show that he was the one ringing Keener's doorbell.

{¶ 13} The trial court evidently did not believe Leonard's claim that he never rang Keener's doorbell. We defer to the trial court's assessment of credibility and have repeatedly stated "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Moreover, Leonard's own testimony calls his credibility into question. We note in particular his confusion about his age, his denial that he admitted to ringing the doorbell twice, and his denial that the video shows him raising his arm. The trial court reasonably could have believed Officer Rose's testimony about Leonard's admission to ringing the bell. And while the video does not show Leonard's finger on the doorbell, it does plainly show him raising his arm in that direction.

{¶ 14} Contrary to Leonard's claim in his brief, there is no evidence that Keener's doorbells were malfunctioning. It is reasonable to conclude that a person was ringing the doorbell each time. No evidence suggests anyone other than Leonard was the culprit. Although there is no direct evidence that it was him, the circumstantial evidence does allow this conclusion beyond a reasonable doubt. Given the close proximity of Keener's doors to the doors of Leonard's condo, he could easily have disappeared inside before

Keener opened the door. And the fact that officers never found footprints in the snow suggests that Leonard slipped out of his home in the area where there was no snow to ring the bell and then slipped back inside. The video of Leonard and Sergeant Maynard's testimony about recreating Leonard's movements strongly suggests that it was Leonard's finger on Keener's doorbell. Lastly, the evidence supports the conclusion that Leonard rang the doorbell even though he had been told that the rings were unwelcome and told not to do it again.

{¶ 15} The evidence presented here is sufficient to support Leonard's convictions. This evidence, if believed, would have convinced the average mind that Leonard was guilty beyond a reasonable doubt. And in the end, this is not the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. We conclude that the trial court neither lost its way nor created a miscarriage of justice in convicting Leonard.

### III. Conclusion

{¶ 16} Both of the assignments of error presented are overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Nolan C. Thomas
Frank Matthew Batz
Hon. Frederick W. Dressel